UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00484-FDW-SCR

| ECO FIBER INC., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **ORDER** |
|  | ) |  |
| YUKON PACKAGING, LLC et al, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court *sua sponte* as to whether this Court has jurisdiction over this matter, which the Court concludes must be determined prior to ruling on the pending Motion for Preliminary Injunction. The Court sought supplemental briefing from the parties on the issue of federal question jurisdiction in this matter. (Doc. No. 36.) Each party submitted briefs on the issue. (Doc. Nos. 38, 39.) For the reasons stated below, the Court remands this matter to state court.

**I.     BACKGROUND**

Plaintiff Eco Fiber Inc. ("EFI") is a North Carolina corporation that manufactures and sells insulated boxes for cold chain packaging. (Doc. No. 1-1, p. 2.) At EFI's incorporation on December 20, 2020, Defendant Rabindranauth Heeralall ("Roy") was the President and a Director. (Id., p. 4.) In an effort to increase sales, EFI entered into a consulting and sales agreement with Defendant Chris Poore ("Poore") and Defendant David Vance ("Vance") through their company, Defendant Zone 1 Consulting, LLC ("Zone 1"). (Id., p. 5–6.) Defendants Poore and Vance provided consulting services beginning in 2021 (Id.) Defendant Poore specifically served as a sales consultant for Plaintiff, responsible for the relationship with Veritiv. (Id., p. 7–8.)

1

Some time prior to September 2021, Defendants Roy, Poore, and Vance allegedly began conspiring to form a competing company for the purpose of stealing Plaintiff's business with Veritiv—namely, Defendant Yukon Packaging, LLC ("Yukon"). (Id., p. 8.) Defendant Yukon Packaging was incorporated, without Plaintiff's knowledge, in September 2022. (Id., p. 9.) Defendant Roy served as the Secretary, Defendant Poore served as the President, and Defendant Vance served as the Vice President. (Id.) Within months of incorporation, Yukon's first manufacturing facility was established 1.8 miles from Veritiv's distribution facility in Hebron, Kentucky. (Id., p. 9–10.) Ultimately, in April 2024, Veritiv stopped transmitting purchase orders for their Customer 1 account to EFI and transitioned its purchases to Yukon Packaging, resulting in an immediate loss of $767,000 in monthly sales. (Id., p. 18–21.) Veritiv's business represented 75% of EFI's revenue. (Id., p. 21.)

On May 9, 2024, EFI filed an action with the Court ("First-Filed Patent Case"[1]) seeking a declaratory judgment of noninfringement of the '872 Patent pursuant to 28 U.S.C. § 1101 and alleging violation of the North Carolina Abusive Patent Assertion Act ("APAA") pursuant to N.C. Gen. Stat. §§ 75-140, *et seq*. (3:24-cv-465; Doc. No. 1.) On the same day, EFI also filed an action designated for the North Carolina Business Court alleging breach of contracts, unjust enrichment, tortious interference with prospective business relations, fraud, breach of fiduciary duty, constructive fraud, misappropriation of trade secrets, unfair and deceptive trade practices, and civil conspiracy. (Doc. No. 1-1.) On May 17, 2024, Defendants removed this matter to this Court. In so removing, Defendants assert this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1454(a). (Doc. No. 1.)

## II.    STANDARD OF REVIEW

---

[1] For clarity, the Court is using Defendants' shorthand for references to the first filed case.

2

Case 3:24-cv-00484-FDW-SCR   Document 41   Filed 06/18/24   Page 2 of 12

"The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Before a court can rule on any other issue, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted). If there is doubt whether such jurisdiction exists, the court must "raise lack of subject-matter jurisdiction on its own motion," without regard to the parties' positions. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (noting federal courts are independently obligated to determine whether subject matter jurisdiction exists, "even when no party challenges it"); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884).

Thus, it is well-settled that lack of subject matter jurisdiction may be raised at any time by a litigant or the court *sua sponte*. See, e.g., id. at 384. Finally, "[n]o party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

Federal district courts retain original subject matter jurisdiction when, among other specific scenarios expressed in Title 28 of the United States Code, either (1) the complaint raises a federal question under 28 U.S.C. § 1331, or (2) the requirements for amount in controversy and diversity of citizenship are met under 28 U.S.C. § 1332. The party asserting jurisdiction bears the burden of proving subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

3

### III.     ANALYSIS

In support of finding this matter properly before the Court, Defendants argue "both actions involve the same patent questions . . . if the case(s) survive dismissal, both cases will necessarily involve patent claim construction of the same patents and also involve a comparison of the properly construed claims to the same [ ] product sold EFI." (Doc. No. 38, p. 4–5.) Conversely, Plaintiff argues "no federal question is present" and "the action must be remanded to state court". (Doc. No. 39, p. 2.)

"A civil action in which any party asserts a claim for relief arising *under any Act of Congress* relating to patents . . . may be removed to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C. § 1454(a) (emphasis added). Cases may "aris[e] under" federal law in two ways. First, when a federal law creates the cause of action asserted. American Well works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). Second, a "special and small category" of cases exist where a claim finds its origins in state rather than federal law, yet federal jurisdiction will still lie. Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). Where all four factors are met, jurisdiction is proper "because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" Id. (quoting Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 313–14 (2005)).

Regarding the first category, no claims here allege a cause of action created by federal patent law. This is a state law case. Thus, the question is whether this case falls within the second, special and small category of cases meeting all four elements of the Gunn test.

**A.     Gunn Factors**

    1.     Necessarily Raised

The first requirement of Gunn asks whether a federal issue is "necessarily raised." "[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." NeuroRepair, Inc. v. The Nath Law Grp., 781 F.3d 1340, 1342 (Fed. Cir. 2015) (finding a federal issue not "necessarily raised" where a plaintiff can prevail on the federal issue or on a non-federal issue); see also Capitol Broadcasting Co., Inc. et al v. City of Raleigh, N.C. et al, No. 23-1796, at 7 (4th Cir. June 17, 2024) ("[T]he federal nature of the controversy 'must be determined from what necessarily appears in the plaintiff's statement of his own claim' unassisted by the anticipation of 'defenses which it is thought the defendant may interpose.'") (citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 10 (1983)). Here, a patent law issue was not necessarily raised in any of the ten causes of action.

As for the first cause of action for breach of contract, Plaintiff alleges a contractual breach of the consulting agreement based, in part, on the implied covenant of good faith and fair dealing. (Doc. No. 1-1, p. 23.) Under North Carolina law, the essential elements for breach of contract are the existence of a valid contract and a breach of the terms of that contract. Poor v. Hill, 138 N.C. App. 19, 26 (2000). While one basis for Defendants' alleged breach includes "charging and collecting patent royalties from EFI when no legitimate basis existed to do so", (Doc. No. 1-1, p. 23–24), Plaintiff alleges numerous non-federal grounds on which they could prevail. For example, Plaintiff could prevail by proving Defendants Zone 1 "provid[ed] EFI's confidential information to a competitor" or "accepting payment from EFI for consulting services while at the same time acting in concert with a competitor to take away EFI's business." (Id.) Similarly, the second cause of action for breach of contract alleges breach of a confidentiality agreement. Importantly, none of

5

the grounds asserted by Plaintiff in support of this claim necessarily raise a federal issue. Rather, each basis for breach of the confidentiality agreement surround the disclosure, use, and failure to protect Plaintiff's confidential information. (Id., p. 24–25.)

The third cause of action for unjust enrichment is rooted in Plaintiff's payment of patent royalties to Zone 1 from January 2023 to October 2023. "Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Chamberlain v. Securian Fin. Grp., Inc., 180 F. Supp. 3d 381, 406 (W.D.N.C. 2016). While Plaintiff alleges it "ceased paying the patent royalties when advised by counsel that [Defendant's] patent did not actually cover the [product] and did not cover the method used by Plaintiff," it is not necessary for Plaintiff to prove whether its conduct was covered by the patent. Instead, it is sufficient for Plaintiff to prove the patent in question was not in existence at the time Defendant asserted payment of patent royalties was required. Therefore, the question of infringement is not a necessary element of the claim.

The fourth cause of action for tortious interference with a prospective business relation requires showing the defendants maliciously induced a third party to refrain from entering into a contract with plaintiff; the contract between the third party and plaintiff would have ensued but for defendants' interference, and in doing so acts without justification; and it resulted in measurable damage to plaintiff. Walker v. Sloan, 137 N.C. App. 387, 393 (2000) (citing Cameron v. New Hanover Memorial Hosp., 58 N.C. App. 414, 440 (1982)). Plaintiff's claim is based on the inducement of Veritiv and other customers of Plaintiff by Defendants "not to enter into further contracts or business with EFI but to instead shift their business to a new company, Yukon" through "violation of [Defendants'] fiduciary and/or other duties to EFI, by wrongful use of EFI's

6

trade secrets, confidential information, and resources, and by other unfair and deceptive acts and practices." (Doc. No. 1-1, p. 26–27.) If these allegations are proven, Plaintiff could prevail without necessarily raising a federal issue. While one act through which Plaintiff asserts liability of Defendants is a bad-faith assertion of infringement to Veritiv, there are several other acts Plaintiff may use to prove inducement by Defendants.

The fifth cause of action for fraud under North Carolina law requires proving "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17 (1992). Plaintiff's fraud claim is based on several false representations. While two such representations potentially raise a question of patent law—namely, whether Defendant Vance held a patent covering a relevant product and whether Defendant Vance made a false statement of patent infringement by Plaintiff (Doc. No. 1-1, p. 27–28)—only one false representation of a material fact must be proven. Therefore, the patent related questions are not "necessary element[s]" of the claim because Plaintiff can succeed by proving any number of the other allegations pled.

The sixth cause of action for breach of fiduciary duty against Defendant Roy does not require a federal issue as a necessary element. Rather, Plaintiff alleges Defendant Roy breached his fiduciary duties by "[t]aking an ownership stake and active role in the business of Yukon, a direct competitor of EFI"; "[u]sing EFI's trade secrets and confidential information for the benefit of Yukon"; "[u]sing EFI's financial resources, factory, supplies, and business reputation for the benefit of Yukon;" "[f]ailing to disclose to EFI's officers, directors, and shareholders that EFI's consultants [ ] were pretending to act for EFI's benefit while in fact using EFI's trade secrets to compete against EFI"; and "[c]onspiring with the other Defendants to take away EFI's Customer

7

business by wrongful and illegal means." (Doc. No. 1-1, p. 30.) Similarly, the seventh cause of action for constructive fraud against Defendant Roy does not raise a federal issue. Plaintiffs must only prove a relationship of trust and confidence existed between Plaintiff and Defendant Roy; Defendant Roy used and took advantage of his position to benefit a competing business, Yukon; and Plaintiff was injured as a result. See Clay v. Monroe, 189 N.C. App. 482, 488 (2008).

The eighth cause of action for trade secret misappropriation requires Plaintiff to prove "(1) defendant knows or should have known of the trade secret; and (2) defendant has had a specific opportunity to acquire the trade secret." Barr-Mullin Inc. v. Browning, 108 FC. App. 590, 596 (1993). Plaintiff alleges the trade secrets in question include: "[t]he prices that EFI charged or quoted to its customers or potential customers for specific products and for delivery to specific locations"; "EFI's overhead and other fixed costs"; "EFI's costs of goods sold"; "EFI's sales volume by customer and location"; "EFI's sales history by customer and location"; "EFI's revenues"; "[n]on-public information concerning EFI's customers"; "[c]ommunications from potential customers requesting quotations for specific products; "EFI's financial statements"; and "EFI's monthly sales history report." (Doc. No. 1-1, p. 31–32.) By proving any of these allegations, Plaintiff can prevail on this claim without necessarily raising a federal issue.

The ninth cause of action for unfair and deceptive trade practices and methods of competition under North Carolina General Statute § 75-1.1 requires Plaintiff to show Defendants used either an unfair or deceptive act or practice, or an unfair method of competition; in or affecting commerce; and proximately caused actual injury to Plaintiff. N.C. Gen. Stat. § 75-1.1. Additionally, the tenth cause of for civil conspiracy relies upon an unlawful, tortious act performed by one or more Defendant in furtherance of the conspiracy. In support of these claims, Plaintiff incorporates the previously detailed allegations. The Court has already held Plaintiff can prevail

by proving those allegations without raising a federal issue, and the same is true under these causes of action.

Accordingly, because the first element on the Gunn test cannot be satisfied for any of the ten state causes of action, this Court cannot exercise its jurisdiction over this matter.

2. Actually Disputed

Though not a necessary claim of any of the ten above outlined state claims, the Court notes the issue of whether Plaintiff owed Defendants royalty payments or infringed upon any of Defendant Vance's patents is "actually disputed" under the second Gunn requirement.

3. Substantial

Even if the state law claims here "necessarily raised" an issue of patent law that was "actually disputed," the federal issue in this case is not substantial in the relevant sense. The third Gunn factor requires a "substantial" federal issue. "It is not enough that the federal issue be significant to the particular parties in the immediate suit . . . [t]he substantiality inquiry [ ] looks instead to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. The key question for "substantiality" is whether allowing state courts to resolve the case would undermine "the development of a[n] uniform body of [patent] law." Vermont v. MPHJ Tech. Invs., LLC, 803 F.3d 635, 646 (Fed. Cir. 2015) (quoting Gunn, 568 U.S. at 261). Ultimately, "[a] 'substantial federal issue is more likely to be present' if: (a) 'a pure issue of [federal] law is dispositive of the case,' (b) 'the court's resolution of the issue will control numerous other cases,' [and] (c) '[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action.'" Inspired Development Grp., LLC v. Inspired Products Grp., LLC, 938 F.3d 1355, 1364 (2019) (quoting NeuroRepair, 781 F.3d at 1345) (alterations in original) (citations omitted).

9

Case 3:24-cv-00484-FDW-SCR   Document 41   Filed 06/18/24   Page 9 of 12

As an initial matter, the patent infringement issues here are not dispositive of whether Plaintiff is entitled to relief. Defendants assert this matter presents the "case within a case" analysis contemplated in Gunn. In Gunn, the Supreme Court determined in a legal malpractice case "in which the attorney's alleged error came in failing to make a particular argument, the causation element requires a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different." Gunn, 568 U.S. at 259. There, the question was posed in a "backward-looking", "merely hypothetical sense." Id. at 261. Here, however, Defendants argue the case-within-a-case analysis is not hypothetical because "what happens in this case will by necessity impact the real-world First-Filed Patent Case." (Doc. No. 38, p. 10–11.) The Court disagrees. Plaintiff could prevail on any of its state law claims a determination that it did not infringe on the relevant patents; therefore, the pleadings do not generate tension between continuing a federal proceeding in the First-File Patent Case and simultaneously continuing these state claims through a state proceeding.[2]

Additionally, a state court's resolution of the issues here will not control "numerous other cases." This case does not present a novel question that could impact other cases. Notably, there is nothing before the Court to suggest any patent related issues in this matter are significant to the federal system as a whole. There is no larger Government interest at play. Rather, the issues here are only significant to the relevant parties and their specific disputes. Accordingly, even assuming the state claims included necessarily raised federal issues, the NeuroRepair factors weigh against a determination that this case rises to the level of presenting a "substantial" federal issue. None of Plaintiff's state claims as pled in this case can "aris[e] under" federal patent law under 28 U.S.C. § 1338(a).

---

[2] Defendants' attempt to distinguish this case from Inspired Development Grp., 938 F.3d 1355 (2019) is unpersuasive.

**B. Remand**

The issue of subject matter jurisdiction is a threshold issue. A defect in subject matter jurisdiction cannot be waived or consented to. Schacht, 524 U.S. at 389; see also Iqbal, 556 U.S. at 671 ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). Because neither diversity jurisdiction[3] nor federal question jurisdiction is present, the matter must be remanded to state court. Defendants' attempt to consolidate this case with the First-Filed Patent Case cannot cure the jurisdictional defect.

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In light of the record, including the Court's initiation of the inquiry into jurisdiction, the Court finds requiring payment of costs and expenses inappropriate in this matter.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that this matter is remanded.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand, (Doc. No. 40), is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (Doc. No. 11), is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that the Clerk of Court terminate the hearing related to the Motion for Preliminary Injunction

---

[3] The parties do not dispute the absence of diversity jurisdiction.

**IT IS SO ORDERED.**

Signed: June 18, 2024

*Frank D. Whitney*
United States District Judge